UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION LONDON

MONROE L. COLEMAN         )
                            )
      Plaintiff,        )      Civil no. 6:10-CV-186-GFVT
                            )
v.                       )
                            )      **MEMORANDUM OPINION**
HARLEY LAPPIN, *et al.*,     )           **AND**
                            )           **ORDER**
      Defendants.     )

**** **** **** ****

Plaintiff Monroe L. Coleman, confined in the United States Penitentiary-McCreary, in Pine Knot, Kentucky, ("USP-McCreary"),[1] has filed a *pro se* civil rights action asserting various constitutional claims under 28 U.S.C. § 1331, pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).

As Coleman has been granted *in forma pauperis* status and is asserting claims against government officials, the Court now screens his Complaint pursuant to 28 U.S.C. §§ 1915A and 1915(e)(2)(B). Both of these sections require a district court to dismiss any claims that are frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from defendants who are immune from such relief. *Id.*; *see also McGore v. Wrigglesworth*, 114 F.3d 601, 607-08 (6th Cir. 1997). The Court will also address the following four motions which Coleman filed:

    (1)      motion to amend/correct his original Complaint to assert "tort claims," [R. 22];

---

[1] Coleman was previously confined in the United States Penitentiary-Big Sandy, located in Inez, Kentucky ("USP-Big Sandy"), and in the United States Penitentiary-Terre Haute,

(2)     motion for clarification of the Order entered on March 17, 2011, [R. 29];

(3)     motion to set aside the Orders entered on February 26, 2011, and March 29, 2011, [R. 31];and

(4)     motion for leave to amend the Complaint to assert additional claims, [R. 36].

For the reasons set forth below, the Court will transfer some of Coleman's claims to a federal court in Indiana, dismiss without prejudice some of his claims for lack venue and/or personal jurisdiction, dismiss the remainder of his claims either for failure to state a claim upon which relief can be granted or as unauthorized filings. Additionally, the Court will deny the four pending motions listed above.

## I.

On July 6, 2010, Coleman filed his original *Bivens* Complaint[R. 2, Attach. 9], and attached over 100 pages of attachments, [R. 2, Attachs. 1-6]. He named fourteen defendants, consisting of six administrative officials from the Bureau of Prisons ("BOP"), five officials from USP-Terre Haute; one official from USP-Big Sandy; one official from USP-McCreary, and Eleanor Holmes Norton, a member of Congress representing the District of Columbia.

Thereafter, Coleman amended his original Complaint several times by filing documents identified as "Amended Complaints." He did this by filing motions seeking leave of Court to amend or simply by filing documents labeled as "Affidavit" or other names which appear to be *de facto* amended complaints. Some of Coleman's amendments were authorized either by Order or the Federal Rules of Civil Procedure, but many were not authorized. As a result of his numerous amendments, other individuals were later added as

---

Indiana, ("USP-Terre Haute"), located in Terre Haute, Indiana.

defendants.

Coleman challenged numerous conditions of not only his past confinement at both USP-Terre Haute and USP-Big Sandy, but also numerous conditions of his current confinement at USP-McCreary. He alleged that all of the defendants have, jointly and severally, violated his rights under the First, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution in both their individual and official capacities. In particular, Coleman alleges that officials at USP-Terre Haute and USP-McCreary have been deliberately indifferent to his serious medical needs, in violation of his Eighth Amendment rights, by refusing to authorize surgery to correct his hernia condition.

## II.

### A.

#### 1.

In his original Complaint, [R. 2], Coleman alleged that when he was previously confined at USP-Terre Haute,[2] various officials there violated his First, Fifth, and Eighth

---

[2]The USP-Terre Haute Defendants are: (1) Helen J. Marberry, Warden; (2) Andrea McPherson, Case Manager; (3) Robert Erwin, Counselor; (4) Debbie Burton, Counselor; (5) Kelly Westinghouse, Psychologist; (6) an individual named "Swift," whom Coleman identifies as "Case Manager," (7) Hector Joyner, Captain; (8) Hattie Sims, former Executive Assistant to Warden Helen J. Marberry; (9) Dennis Gaymon, prison employee; and (10) "Dr. Ndafie," whom Coleman identified as either a doctor or a physician's assistant. The Court takes judicial notice of the fact that this last USP-Terre Haute defendant's name is actually Andrew Ndfie, not "Ndafie."

On February 10, 2010, Andrew Ndfie filed a sworn Declaration in another civil case in this Court, in which he was named as a defendant. *See* Declaration of Andrew Ndfie, *Duran v. Grondlosky*, 6:08-CV-387-ART, [R. 29-5]. In that Declaration, Andrew Ndfie stated that he was employed as an Assistant Health Services Administrator at USP-Terre Haute. The Clerk of the Court will be directed to correct the CM/ECF cover sheet to reflect this defendant's correct name.

It appears that Coleman was confined in USP-Terre Haute between 2006 and early 2010. *See* "Statement of Facts" attached to Complaint [R. 2-1, p. 2; *id*., p. 10,¶ 74].

Amendment rights by: (1) failing or refusing to provide him with proper medical care; (2) causing a false disciplinary report to be filed against him which resulted in the imposition of sanctions; (3) denying him the right to call witnesses at his disciplinary hearing; (4) discriminating against him because of his African American race; (5) removing him from a rehabilitative prison program, identified as the "Challenge Program," by falsely accusing him of possessing sexually explicit material; (6) refusing to transfer him to a lower security prison; and (7) placing him in segregation without justification.

On July 23, 2010, Coleman filed two motions seeking leave to file an Amended Complaint. [R. 7; R. 9]. Coleman asked to assert additional claims of racial discrimination against the existing USP-Terre Haute defendants, and to add as defendants other USP-Terre-Haute officials. He alleged that the new defendants retaliated against him for filing grievances complaining about various conditions of his confinement, denied him visitation privileges in violation of the First Amendment, racially discriminated against him, and denied him necessary medical treatment for his hernia condition. [*Id.*]. Coleman also asked to amend his Complaint to reflect that he was asserting claims against all USP-Terre Haute defendants, old and new, in both their individual and official capacities. [*See* R. 7].

On March 18, 2011, the Court granted both of Coleman's motions to amend, [R. 7; R. 9], and directed the Clerk of the Court to docket Coleman's tendered Amended Complaint, [R. 13], as an Amended Complaint filed retroactively to August 31, 2010. [*See* R. 25].[3] On April 29, 2011, Coleman filed three lengthy "Affidavits," in which he reiterated his prior claims, and asserted new claims against the USP-Terre Haute Defendants and other

_____

[3] Thus, Coleman's August 31, 2010, Amended Complaint, [R. 13], became the First

4

defendants named in this action. [R. 33-35]. Coleman's new claims included, but were not limited to, allegations that some of the USP-Terre Haute Defendants should have told him not to eat prior to undergoing hernia surgery, and that Warden Marberry conspired with another federal Warden to transfer him to USP-McCreary to prevent him from filing further grievances. [R. 35].

On September 8, 2010, Coleman filed a motion to transfer his claims against the USP-Terre Haute Defendants to the federal judicial district in Indiana where USP-Terre Haute is located. [R. 14]. The Court denied that motion without prejudice on March 29, 2011, noting that consideration of Coleman's transfer motion was premature until all of his claims were screened under 28 U.S.C. §§ 1915(a) and 1915(e). [*See* R. 30, 3, 5].

**2.**

Having now fully screened Coleman's original Complaint, Amended Complaints, and would-be amended Complaints, the Court now determines that Coleman has improperly joined the USP-Terre Haute Defendants to this action and that the claims against them should be severed and transferred to the proper federal court in Indiana for all further disposition.

Proper venue in civil rights claims is governed by the general venue statute, 28 U.S.C. § 1391. Section 1391(e) provides a special venue provision for any action in which at least one of the defendants is an officer or employee of the United States or its agencies acting in his or her official capacity or under color of legal authority. *See* 28 U.S.C. § 1391(e). But even where venue is proper, 28 U.S.C. § 1404(a) permits a district court to transfer a case to another district where it might have been brought when doing so would serve the

---

Amended Complaint.

convenience of the parties or the interests of justice. "[A]s the permissive language of the transfer statute suggests, district courts have 'broad discretion' to determine when party 'convenience' or 'the interest of justice' makes a transfer appropriate." *Reese v. CNH America, LLC*, 574 F.3d 315, 320 (6th Cir. 2009).

In determining what  would serve the convenience of the parties or the interests of justice, a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public interest concerns, "such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Moses v. Business Card Express, Inc*., 929 F.2d 1131, 1137 (6th Cir.1991) (*citing Stewart Org., Inc. v. Ricoh Corp*., 487 U.S. 22, 30 (1988)).

Here, all of Coleman's constitutional claims against the USP-Terre Haute Defendants arose in Terre Haute, Indiana, which is located in the judicial district of the United States District Court for the Southern District of Indiana ("the Southern District of Indiana"). Potential witnesses presumably reside or could be located in that district, and relevant documents, if any, are presumably located in the Southern District of Indiana.  To the extent that Coleman asserts claims against the USP-Terre Haute Defendants in their individual capacities, allowing this action to proceed here based solely upon venue considerations set forth in 28 U.S.C. § 1391(e) becomes even less attractive.  If this action remains in this district, the USP-Terre Haute Defendants would most likely argue with good reason that any individual capacity claims against them should be dismissed for lack of *in personam* jurisdiction.

A defendant must have purposefully established minimum contacts within the forum

state before personal jurisdiction will be found to be reasonable and fair. *International Shoe Co. v. Washington*, 326 U.S. 310, 316-19 (1945). In order to establish minimum contacts, a plaintiff must show that the defendant should reasonably anticipate being hauled into court in the forum state because he purposefully availed himself of the privilege of conducting activities there. *Id.*; *Southern Machine Co. v. Mohasco Indus.*, 401 F.2d 374, 380 (6th Cir. 1968). Put another way, "the relevant inquiry is whether the facts of the case demonstrate that the non-resident defendant possesses such minimum contacts with the forum state that the exercise of jurisdiction would comport with 'traditional notions of fair play and substantial justice.'" *Theunissen v. Matthews*, 935 F.2d 1454, 1459-50 (6th Cir. 1991) (citations omitted).

None of the Indiana-domiciled USP-Terre Haute Defendants have such minimum contacts with the Commonwealth of Kentucky so that exercising personal jurisdiction over them would be constitutionally permissible. Presumably, the only reason that Coleman filed this action in this district is because he is now incarcerated here, but none of the USP-Terre Haute Defendants could have reasonably foreseen or anticipated that they could be hauled into a federal court in Kentucky based on their alleged actions in Indiana. To the extent that Coleman asserts individual capacity claims against the USP-Terre Haute Defendants about events alleged to have occurred in the Indiana, the Southern District of Indiana is in a better position to determine which Indiana statute of limitations may apply. *See Abdur-Rahim v. Doe*, No. 7:08-CV-00224-ART, 2009 WL 678348, at *3, (E.D. Ky. March 11, 2009) (transferring venue of prisoner's civil rights claims, which accrued in New Jersey, to the federal court in that state under 28 U.S.C. § 1404(a), for the convenience of the parties and

the interests of justice).

In this case, only the transfer of Coleman's claims against the USP-Terre Haute Defendants to the Southern District of Indiana is warranted, not a transfer of the entire action which § 1404 authorizes. Under such circumstances, FRCP 21 permits severance of claims against parties who have been improperly joined.[4] "The manner in which a trial court handles misjoinder lies within that court's sound discretion." *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988). "Rule 21 gives the court discretion to make three types of orders. The court may add parties, drop (dismiss) parties, and may sever '[a]ny claim against a party.'" 4-21 *Moore's Federal Practice-Civil* § 21.02 (internal quotation omitted). "Severance under Rule 21 results in separate actions." *Id*. at § 21.06. "As with any case in federal court, [the severed action] may be transferred under appropriate circumstances . . . . Indeed, the fact that a claim might be subject to transfer to a more appropriate venue is a valid reason to order severance." *Id*.

Accordingly, the Court will sever Coleman's claims against the USP-Terre Haute Defendants, set forth in R. 1, 7, 9, and 13, and transfer those claims to the Southern District of Indiana for further disposition. Coleman asserted other claims against the USP-Terre Haute Defendants in his three "Affidavits" filed on April 29, 2011. [*See* R. 33, 25]. The Court will not address the merits of the additional claims Coleman asserted in those

---

[4] Rule 21 provides:

> Misjoinder of parties is not ground for dismissal of an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party.

"Affidavits," because they are *de facto* Amended Complaints, for which Coleman did not seek leave of Court to file pursuant to FRCP 15. The constitutional claims Coleman asserted in those three filings will therefore be dismissed without prejudice.

**B.**

**1.**

In his original Complaint [R. 2], Coleman named only one USP-McCreary official[5] as a defendant, the former Warden Eric Wilson. In that filing, Coleman made no specific claims against Wilson, but instead only generally alleged that since being transferred to USP-McCreary sometime in 2010, he has been denied medical treatment. In a subsequent filing dated April 29, 2011, titled as an"Affidavit," Coleman alleged that when he was first transferred to USP-McCreary, he confronted Wilson and explained the seriousness of his hernia condition, his continuing pain, and the need for corrective surgery. [R. 35]. Coleman alleged Wilson responded as follows: "'I don't know why [defendant] Marberry sent you here, you were better getting that operation at Terre Haute . . . . You and many others have medical problems so you just have to get in line like everyone else.'" [*Id*., 2-3].

**2.**

A claim must state sufficient factual matter which, if accepted as true, would allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A claim is subject to dismissal for failure to state a claim where the complaint pleads facts that are "merely

---

Fed. R. Civ. P. 21.

consistent with" a defendant's liability. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Because Coleman's claims against Wilson fail to meet this threshold requirement, they will be dismissed with prejudice for failure to state a claim upon which relief can be granted.

In the "Statement of Facts" attached to his original Complaint, Coleman set forth a confusing would-be chronology of his confinement history. [R. 2, Attach. 1]. But to the extent that Coleman complains of being denied medical treatment at USP-McCreary, he alleges only that a Physician's Assistant by the name of "Baker" administered the wrong medicine to him and improperly charged him a $2.00 medical co-pay fee. [*Id*., 8-9].

In his First Amended Complaint, filed on August 31, 2010, Coleman alleged that just a few weeks before, in early August 2010, he underwent hernia surgery and that when he returned to USP-McCreary, "care provider Baker" refused to administer his prescribed Hepatitis B and C medication to him. Coleman alleged that the medication which "Baker" gave him did not relieve his post-hernia surgery pain. [R. 13, Attach. 1, 2].

*Bivens* requires a showing that the named defendant's actions resulted in the deprivation of a constitutional right, *Rizzo v. Goode*, 423 U.S. 362, 375-76 (1976). Coleman alleged that "Baker" denied him necessary medication, but he did not name "Baker" as a defendant to this action. Coleman did not, however, allege that *Wilson* was personally or directly involved in either the alleged denial of his Hepatitis B and C medication in August 2010, or in any of the other medical decisions at USP-McCreary about which he now complains. Further, Coleman did not allege that Wilson was directly or personally involved

---

[5]The USP-McCreary Defendants are: (1) Eric Wilson, former Warden; (2) an individual identified as "Rush;" (3) an individual identified as "Mullins;" (4) an individual identified as "Neal;" and (5) and individual named "Partin," whom Coleman identified as "Counselor."

in any of other alleged non-medical unconstitutional actions about which he complains, *i.e.*, the alleged mail tampering, racial discrimination, and verbal harassment. He alleged only that on one occasion he told Wilson about his medical condition and that Wilson could not determine why Coleman had been transferred to USP-McCreary. Those allegations do not establish *Bivens* liability against Wilson.

Under the facts Coleman has alleged, the only grounds upon which liability could be imposed against Wilson, as the former Warden and head administrator of USP-McCreary, would be the doctrine of *respondeat superior*. But the doctrine of *respondeat superior* cannot create liability in a *Bivens* action. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978); *Kesterson v. Luttrell*, 172 F.3d 48 (6th Cir.1998); *Jones v. City of Memphis*, 586 F.2d 622, 625 (6th Cir. 1978). A supervisory government employee is only liable for his or her own misconduct. *Ashcroft v. Iqbal*, 129 S.Ct. at 1948-49.

Under *Bivens*, aplaintiff must allege that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. *Rose v. Caruso*, 284 F. App'x. 279, 282-83 (6th Cir. 2008); *Searcy v. City of Dayton*, 38 F.3d 282, 287 (6th Cir. 1994); *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 872 (6th Cir. 1982). "In order for supervisory liability to attach, a plaintiff must allege and prove that the official 'did more than play a passive role in the alleged violation or showed mere tacit approval of the goings on.'" *Loy v. Sexton*, 132 F. App'x 624, 626 (6th Cir. 2005) (*quotingBass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)). In other words, liability under *Bivens* must be based on active unconstitutional behavior. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "A supervisor's awareness of allegations of unconstitutional conduct and failure to act are not a

basis for liability." *McCurtis v. Wood*, 76 F. App'x 632, 634 (6th Cir. 2003). Thus, Wilson's former position as Warden of USP-McCreary does not render him liable in a *Bivens* action for the decisions which subordinates or medical professionals at USP-McCreary made absent some allegation that he was either directly or personally involved in those medical decisions, or condoned the allegedly unconstitutional actions. *See Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984); *see also Spruill v. Gillis*, 372 F.3d 218, 236 (3rd Cir. 2004) ("If a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands."); *Sanders v. United States*, 760 F.2d 869, 872 (8th Cir.1985) (holding that the warden of a federal medical center could not be liable under doctrine of *respondeat superior* for a prisoner's alleged inadequate medical treatment, absent a showing of warden's personal involvement in the alleged negligent acts); and *Bryant v. Carlson*, 652 F.Supp. 1286, 1287-88 (D. D.C.1987) (holding that the director of the BOP and the penitentiary warden could not be liable to a prisoner under the *respondeat superior* theory).

To the extent that Coleman asserts Fifth or Eighth Amendment deliberate indifference claims because Wilson denied his institutional grievances, he states no valid claim because such action is not the type of personal involvement required to state a *Bivens* claim. Liability under *Bivens* does not exist simply because a non-medical administrator either denied a grievance or failed to act based upon information contained in a medical grievance. *See Shehee*,199 F.3d at 300; *Alder v. Correctional Medical Services*, 73 F. App'x 839, 841 (6th Cir. 2003). "The denial of the grievance is not the same as the denial of a request to receive medical care." *Martin v. Harvey*, 14 F. Appx. 307, 309 (6th Cir. 2001).

For these reasons, Coleman's First, Fifth and Eighth Amendment constitutional claims against former Warden Wilson will be dismissed with prejudice for failure to state a claim upon which relief can be granted.  28 U.S.C. § 1915(e)(2)(B)(ii).[6]

## C.

### 1.

On January 3, 2011, Coleman filed a Second Amended Complaint asserting new claims against four other USP-McCreary officials: Defendants "Dr." Rush, Mullins, Neal, and "Counselor" Partin, all of whom he alleged held various positions administering the "Challenge Program" at USP-McCreary.  [R. 21].[7]

Coleman alleged that between early October 2010 and December 2010, these defendants violated his First, Fifth and Eighth Amendment rights by slandering him, racially discriminating against him; denying him equal protection of the law, verbally harassing him, threatening him, and attempting to remove him from the Challenge Program at USP-

---

[6] In one of his three "Affidavits" filed on April 29, 2011, [R. 33-35], Coleman also asserted a conspiracy claim against Wilson.  He alleged Wilson and USP-Terre Haute Warden Marberry conspired to have him transferred to USP-McCreary to prevent him from filing further administrative grievances and to cause his medical condition to worsen.  [R. 35, pp. 3-4].  As discussed, the Court has dismissed the claims Coleman asserted in those "Affidavits" because they are *de facto* Amended Complaints for which he did not seek leave of Court to file under FRCP 15.  Thus, it is unnecessary to address the merits of Coleman's conspiracy claim.

[7] Coleman filed this Amended Complaint without leave of Court, although at that time he had  three other pending motions seeking leave to amend his Complaint,  [R. 7, 9, 13].  Despite having identified his filing as an "Amended Complaint" in the caption, and having asserted new claims against new defendants, Coleman stated in the text of his filing that ". . .this is **no new or added complaint** as stated in the original and first amended complaint. . . ." [R. 21, 1] (emphasis in original).  Based on Coleman's caption, the Clerk of the Court properly docketed this filing as an "Amended Complaint" because Coleman asserted new claims against defendants.  This filing actually constituted a *Second* Amended Complaint, as Coleman's August 31, 2010, Amended Complaint, [R. 13], was his *First* Amended Complaint.  As noted, on March 17, 2011, the Court allowed a *third* amendment to include the claims Coleman asserted in motions R. 7 and R. 9.

McCreary in retaliation for filing grievances and otherwise exercising his First Amendment rights, tampering with his legal mail, delaying or refusing to process action on his administrative complaints, denying his administrative complaints, refusing to let him take a shower on one occasion, refusing to process his administrative appeals, and ordering him to perform additional and unnecessary work at his UNICOR prison job.

## 2.

It is clear from the face of Coleman's January 3, 2011, Second Amended Complaint, [R. 21], that prior to filing it he failed to fully exhaust his various constitutional claims against these four defendants through the BOP's administrative remedy process.[8] That three-step process takes about ninety days to complete, absent extensions.  Coleman alleged that in early December 2010, the four defendants either attempted to, or succeeded in, removing him from the Challenge Program at USP-McCreary.  Coleman filed his Second Amended Complaint about a month later, on January 3, 2011.  Based on the time-frame set forth in the

---

[*See* R. 25].

[8]    The four-tiered administrative remedy scheme available to inmates who have any complaints about any aspect of their confinement in BOP institutions is set out in its Administrative Remedy Program, found at 28 C.F.R. §§ 542.10-542.19.  Section 542.13(a) demands that an inmate first informally present his complaint to the staff by filing a BP-8, thereby providing them with an opportunity to correct the problem, before filing a request for an administrative remedy.  If the inmate cannot informally resolve his complaint, then he may initiate the formal remedy process by filing a written request (a BP-229 form, formerly a BP-9) to the Warden.

If the inmate is not satisfied with the Warden's response, then he has 20 days from the date of the Warden's response in which to appeal (BP-230, formerly BP-10) to the Regional Director for the geographical region in which the inmate's place of confinement is located; for federal prisoners in the Eastern District to Kentucky, the appeal goes to the Mid Atlantic Regional Office of the BOP in Annapolis Junction, Maryland.  If the prisoner is not satisfied with the Regional Director's response, within 30 days after the date of the Regional Director's response, he may appeal to the Office of General Counsel of the BOP, (BP-231, formerly BP-11).  *See* § 542.15 (a) - (b).

Second Amended Complaint, Coleman could not have completely exhausted his claims against these defendants concerning his expulsion (either attempted or actual) from the Challenge Program prior to January 3, 2011.

Coleman's other claims against these four defendants suffer from the same deficiency. On November 24, 2010, Coleman submitted an "Inmate Request to Staff Member" complaining about the alleged delay in receiving remedy forms. On December 9, 2010, Associate Warden J. Ray Ormand responded that on November 24 and 29, 2010, Coleman's counselor (Defendant Partin) had issued Coleman a remedy request form. [R. 21, Attach. 1, 3]. Further, Coleman admitted that he received administrative remedy forms on November 30, 2010. *See* [R. 21, Attach. 1, 11]. Yet Coleman filed his Second Amended Complaint just over a month later, on January 3, 2011, before he could have completed the entire three-step administrative remedy process.

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires state and federal prisoners to exhaust all available administrative remedies before filing a federal civil action challenging prison conditions. *See also Porter v. Nussle*, 534 U.S. 516, 525 (2002)*; Booth v. Churner*, 532 U.S. 731, 741 (2001). Additionally, in *Woodford v. Ngo*, 548 U.S. 81 (2006), the Supreme Court held that exhaustion of administrative remedies must be done "properly," which means going through all steps that the agency requires, obeying all directions, and adhering to all deadlines set by the administrative rules. *Id*. at 90.

When the affirmative defense of failure to exhaust appears on the face of the complaint, a district court can dismiss the Complaint *sua sponte* on the grounds that it fails

to state a claim. *Jones v. Bock*, 549 U .S. 199, 214-15 (2007); 28 U.S.C. § 1915A(b)(1));

*Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2007) (affirming *sua sponte* dismissal of a

PLRA case *sua sponte* for failure to state a claim predicated on failure to exhaust, where the

complaint itself showed that the prisoner failed to exhaust his administrative remedies).

This Court, and other district courts in this circuit, have held that *sua sponte* dismissal

of a complaint is warranted where failure to exhaust is apparent from the face of the

complaint. *Smith v. Lief*, No. 5:10-00008-JMH, 2010 WL 411134, at *4 (E.D. Ky. January

27, 2010); *Gunn v. Kentucky Depart. Of Corrections*, No. 07-103, 2008 WL 2002259, at * 4

(W.D. Ky. May 7, 2008); *Deruyscher v. Michigan Dept. of Corrections Health*, No. 06-

15260-BC, 2007 WL 1452929, at *3 (E.D. Mich. May 17, 2007).

Coleman short-circuited the BOP's exhaustion process by filing his Second Amended

Complaint on January 3, 2011. Therefore, his claims in that filing are facially premature and

will be dismissed without prejudice. Coleman must first complete the BOP administrative

remedy process. Coleman's chances of success on the merits of his "Challenge Program"

claims are questionable, because prisoners have no constitutionally protected liberty interest

in either discretionary release prior to the expiration of their prison terms, *see Greenholtz v.

Inmates of Neb. Penal & Correctional Complex*, 442 U.S. 1, 7(1979), or participation in any

prison rehabilitation programs, *see Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976).

### D.

### 1.

Coleman asserts claims against several BOP Defendants[9], all of whom held various

_____

[9] The BOP Defendants are: (1) Harley Lappin, Director, BOP; (2) Michael Nelley,

administrative positions within the BOP but who did not work at any of the federal prisons where Coleman has been confined. Coleman alleges that the BOP Defendants violated his First, Fifth, and Eighth Amendment rights by allowing the USP-Terre Haute defendants to retaliate against him for filing grievances, denying him needed medical care for his hernia and other medical conditions while confined in both USP-Terre Haute and USP-McCreary, failing to warn him that he should not eat prior to undergoing surgery, upholding adverse rulings rendered by the USP-Terre Haute Defendants during the administrative remedy process, and either ordering him, or allowing him, to be transferred to USP-McCreary.

## 2.

Coleman did not allege that the BOP Defendants were directly or personally involved in any of the actions alleged to have occurred at USP-Terre Haute, USP-McCreary, or USP-Big-Sandy. The claims against these defendants are instead based on adverse decisions they may have made when Coleman appealed administrative rulings from the institutional levels. Accordingly, Coleman does not assert a valid Fifth Amendment claim against the BOP Defendants because, as discussed, the denial of administrative grievances is not the type of personal involvement required to state a *Bivens* claim. *Nwaebo v. Hawk-Sawyer*, 83 F. App'x 85 (6th Cir. 2003); *Shehee v. Luttrell*, 199 F.3d at 300. Additionally, a plaintiff must allege more than that an official merely knew of, played a passive role in, or tacitly approved of, the alleged constitutional violation. *Loy v. Sexton*, 132 F. App'x at 626. Coleman does not allege that the BOP Defendants were actively involved in the decisions made at the

---

Regional Director - Northeast Regional Office; (3) Ivy Finenstadt , also known as "Ivy Feinenstadt"; (4) Richard W. Schott, Regional Counsel - North Central Regional Office; and (5) Delbert G. Sayers, Supervisor of the BOP's Designation & Sentence Computation Center, Grand

various BOP facilities where has been confined, only that the BOP Defendants *knew* about the alleged unconstitutional actions occurring at BOP facilities but took no action to stop the actions.

Further, to the extent that Coleman is dissatisfied with the BOP Defendants' responses to his administrative appeals, it is well-settled that prisoners have no inherent constitutional right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Overholt v. Unibase Data Entry, Inc*., 221 F.3d 1335, 2000 WL 799760, at *3 (6th Cir. June 14, 2000) (Unpublished Table decision); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir.1991).

For these reasons, Coleman's First, Fifth and Eighth Amendment constitutional claims against the BOP Defendants will be dismissed with prejudice for failure to state a claim upon which relief can be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

## E.

In one of his two July 23, 2010, motions to amend, Coleman asked to name as an additional defendant "Wiley," whom he identified as the former Warden of the United States Penitentiary in Atlanta, Georgia, ("USP-Atlanta"). [*See* R.7, 2]. Coleman alleged that while he was confined at USP-Atlanta, Wiley knew that he suffered from various medical problems; that Wiley knew, or should have known, that Coleman would receive inadequate medical treatment at USP-McCreary. Given these facts, Coleman argued, Wiley should not have allowed him to be transferred to USP-McCreary. [*Id*.]. Coleman alleges that in either transferring him, or allowing him to be transferred to USP-McCreary, Wiley demonstrated

Prairie, Texas.

deliberate indifference to his serious medical needs in violation of the Eighth Amendment. On March18, 2011, the Court allowed Coleman to amend his Complaint and name Wiley as a defendant. [R. 25].

Coleman's claims against Wiley would have arisen when he was confined in USP-Atlanta, which is located in the judicial district of the United States District Court for the Northern District of Georgia ("the Northern District of Georgia"). Thus, the proper venue for Coleman's constitutional claims against Wiley is the Northern District of Georgia, where the substantial part of the events giving rise to the claim transpired. *See* 28 U.S.C. § 1391(c).

This circuit does not favor *sua sponte* dismissals for improper venue, *Janis v.Ashcroft*, 348 F.3d 491, 493 (6th Cir. 2003), but a district court can consider the venue factor when the alleged facts have absolutely no connection with the state or circuit in which the complaint is filed. *See*, *e.g.*,*Davis v. Reagan*, No. 88-6419, 1989 WL 40200, at *1 (6th Cir. Apr. 20, 1989) (affirming *sua sponte* dismissal for improper venue where facts had no connection to Tennessee and the majority of defendants resided in other districts).

Another factor to consider is personal jurisdiction over an out-of-state individual, such as Wiley. *See Air Prods. & Controls, Inc. v. Safetech Int'l, Inc*., 503 F.3d 544, 550 (6th Cir. 2007). Coleman does not allege that Wiley made his decisions in Kentucky or that he had any connection, much less a substantial one, with Kentucky that would be sufficient for this Court to exercise personal jurisdiction over him.

Although this Court lacks personal jurisdiction over Wiley, it has the discretion either to dismiss the claims against him, or to sever those claims from this action and transfer them to any district or division in which they could have been brought. *See* 28 U.S.C. § 1406(a);

*Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962) (Section 1406(a) "authorize[s] the transfer of [a] cas[e] . . . whether the court in which it was filed had personal jurisdiction over the defendants or not.).

District courts have broad discretion to determine when "convenience" or "the interest of justice" warrant a transfer. *Reese v. CNH America, LLC*, 574 F.3d 315, 320 (6th Cir. 2009); *Miles v. WTMX Radio*, 15 F. App'x 213, 215 (6th Cir. 2001); *First of Michigan Corp. v. Bramlet*, 141 F.3d 260, 262 (6th Cir. 1998). Coleman has not asked to transfer his *Bivens* claims against Wiley as he did his claims against the numerous USP-Terre Haute defendants. It is not in the interests of justice to transfer Coleman's claims against Wiley, as they may be barred by the state of Georgia's two-year statute of limitations, which applies to *Bivens* actions. *See* Ga. Code Ann. § 9-3-33; *Interial v. Chippi*, No. 10-13713, 2011 WL 2119691, at *1, (11th Cir. May 31, 2011) (Slip Copy). The Court will dismiss Coleman's claims against Wiley without prejudice so that he may assert the claims in a separate *Bivens* action in the Northern District of Georgia.

**F.**

**1.**

In his original Complaint [R. 2], Coleman named only one USP-Big Sandy official, Kimberly Moore, as a defendant. He identified her as a "former" employee. Coleman alleged that on June 14, 2005, while confined at USP-Big Sandy, Moore caused him to be charged with a "false and fake" disciplinary infraction for calling her an "adulteress." [R. 2, Attach. 1, 9; R. 2, Attach. 5, 1-2; R. 7, 2; R. 34, 11]. Coleman claims that by calling Moore an "adulteress," he was simply exercising his freedom of speech rights under the First

Amendment. Further, Coleman alleges that Moore had the charge filed against him because of racial prejudice and that as a result of Moore's actions, he lost some institutional privileges, and ultimately, his prison job. [R. 2, 11; R. 34,11 ]. Relying on these facts, Coleman asserts a First Amendment retaliation claim against Moore.

## 2.

Coleman's First Amendment retaliation claim fails for three reasons. First, Coleman's claims are time-barred under the applicable statute of limitations. To determine the statute of limitations in *Bivens* civil rights cases, courts apply the most analogous statute of limitations from the State where the events occurred. *Wilson v. Garcia*, 471 U.S. 261, 268-71 (1985). Coleman alleged that Moore caused the disciplinary charge to be filed against him around June 14-15, 2005. [*See* R. 2, Attach. 5, 1-2]. Because the alleged event occurred in Kentucky, its one-year statute of limitations for asserting personal injuries applies. Ky. Rev. Stat. Ann. § 413.140(1)(a); *Mitchell v. Chapman*, 343 F.3d 811, 825 (6th Cir. 2003); *Collard v. Kentucky Board of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990). Coleman's First Amendment claims against Moore accrued in June 2005, when he was charged with the disciplinary action, and when he first became aware, or should have become aware of, his alleged mistreatment by Moore. *See McCune v. City of Grand Rapids*, 842 F.2d 903, 905 (6th Cir.1988). Thus, the one-year limitations period began running on June 14, 2005 and expired on June 14, 2006.

It is clear from the face of Coleman's original Complaint, dated July 6, 2010, that his claims against Moore are time-barred. Claims barred by the statute of limitations are frivolous, *Dellis v. Corr. Corp. of Am.,* 257 F.3d 508, 511 (6th Cir. 2001). A district court

may dismiss a complaint, *sua sponte*, as time-barred where it is obvious from the face of the complaint that the statute of limitations has run. *Jones v. Bock,* 549 U.S. 199, 214-15 (2007).

Second, even if Coleman's claims were not time-barred, they would fail because challenges to events related to disciplinary convictions must be brought by way of a petition for writ of habeas corpus, under 28 U.S.C. § 2241, not by way of a *Bivens* civil rights action. Coleman does not allege that his disciplinary conviction stemming from the June 2005 disciplinary charge has been set aside, reversed or otherwise called into question. He cannot assert a *Bivens* claim challenging the circumstances of his disciplinary charge unless and until his disciplinary conviction has been reversed. Success in a *Bivens* action would necessarily imply the invalidity of a disciplinary conviction, which is not permitted. *See Edwards v. Balisok*, 520 U.S. 641, 646 (1997); *Lanier v. Bryant*, 332 F.3d 999, 1005 (6th Cir. 2003) (applying *Balisok* to *Bivens* actions); *Johnston v. Sanders*, 86 F. App'x 909, 910 (6th Cir. 2004).

Third, it is does not appear from the Coleman's filings that he lost any good-time credits ("GTC") as a result of the 2005 disciplinary conviction. Generally, only the loss of GTC, which results in an extended sentence, qualifies as a sanction which creates an atypical and significant hardship in relation to the ordinary incidents of prison life. *Sandin v. Conner*, 515 U.S. 472, 484-86 (1995); *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998). For these reasons, Coleman's claims against Moore will be dismissed for failure to state a claim upon which relief can be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

## G.

Coleman appears to allege that Congresswoman Norton is responsible for the

violation of his constitutional rights solely because he was convicted in the District of Columbia and because she represents the District of Columbia in the United States Congress. The merits of this claim are highly questionable because Coleman did not allege that Norton, who is not a BOP employee, was personally or directly involved in any of the alleged unconstitutional actions at *any* the three BOP institutions where he has been confined. As noted, *Bivens* liability requires an allegation that the defendant actively deprived him of a constitutional right, *Rizzo v. Goode*, 423 U.S. 362, 375-76 (1976), not that he or she merely failed to act in response to alleged unconstitutional action. *Shehee*, 199 F.3d at 300; *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998).

Coleman alleges no facts suggesting that this Court would have personal jurisdiction over Norton, who presumably resides in or around the District of Columbia area. For the same reasons the Court has dismissed without prejudice the claims against former Warden Wiley (venue considerations under 28 U.S.C. § 1391(c) and lack of personal jurisdiction), the Court will dismiss Coleman's claims against Norton without prejudice to him asserting such claims against her in the appropriate federal court.

## H.

Coleman has filed four other pending motions, [R. 22, R. 29, R. 31, and R. 36]. In two of those motions, [R. 22; R. 36], Coleman asks to amend his original Complaint for essentially the fourth and fifth times. He asks to assert a claim under the Federal Tort Claims Act, ("the FTCA") 28 U.S.C. §§ 1346(b), 2671-2680, [R. 22], and to assert constitutional claims against John C. Booker, a USP-McCreary employee involved in administering the Challenge Program, [R. 36]. Generally, leave to amend is liberally granted, except when the

23

amendment would be futile.  *Frank v. D'Ambrosi*, 4 F.3d 1378, 1386 (6th Cir. 1993); *Newell v. Brown*, 981 F.2d 880 (6th Cir. 1992).  Both motions will be denied because the proposed amendments would be futile.

An FTCA action is barred unless (1) an administrative claim is presented to the appropriate federal agency for administrative settlement within two years of its accrual, and the agency has denied the claim, 28 U.S.C. § 2675(a); *McNeil v. United States*, 508 U.S. 106, 111 (1993); *Garrett v. United States*, 640 F.2d 24, 25 (6th Cir. 1981), and (2) the claimant commences an action in federal court within six months of the agency's denial of the claim. 28 U.S.C. § 2401(b);  *Blakely v. United States*, 276 F.3d 853, 865 (6th Cir. 2002)

Compliance with both statutory conditions is a jurisdictional prerequisite to filing suit under the FTCA, *Glarner v. U.S., Dep't of Veterans Admin.*, 30 F.3d 697, 700 (6th Cir. 1994), and an FTCA claim is barred absent satisfaction of both requirements.  28 U.S.C. § 2401(b); *United States v. Kubrick*, 444 U.S. 111, 117-18 (1979); *Blakely*, 276 at 865; *Rogers v. United States*, 675 F.2d 123 (6th Cir. 1982); *Garrett*, 640 F.2d at 25.

Coleman has attached no documentation showing that he has administratively exhausted his proposed FTCA claim by complying with 28 U.S.C. § 2675(a).  The plaintiff has the burden of demonstrating subject matter jurisdiction, *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996), and Coleman has not met his burden.  His motion seeking leave to amend to assert an FTCA claim, [R. 22], will be denied without prejudice.

The Court will also deny Coleman's motion to assert *Bivens* claims against Booker. Coleman alleged that between July 25-29, 2011, he argued with Booker during a Challenge

Program meeting about having to read aloud a quotation Booker had written that Booker accused him of being disrespectful and having a bad attitude, and that other USP-McCreary officials counseled him to improve his attitude. Coleman states that he sought an informal resolution but that he later withdrew the request. He does not allege a constitutional violation.

First, complaints about alleged verbal abuse by prison officials, even if true, do not constitute Eighth Amendment violations. *Hinton v. Doney*, 16 F.3d 1219, 1994 WL 20225, at *2 (6th Cir. Mich. January 26, 1994) (Table); *Ivey v. Wilson*, 832 at 954; *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir.1987). As Coleman fails to state a viable claim against Booker, his motion is futile and will be denied.

Second, Coleman has filed (1) a "Motion for Clarification," [R. 29], in which he questions and/or objects to certain provisions of the Order entered herein on March 17, 2011, and (2) a motion to set aside the Orders entered herein on February 26, 2011, and March 29, 2011, respectively. [R. 31]. Based upon the Order entered on March 29, 2011, [R. 30], and the various dispositions set forth in this Opinion, both motions are now moot and are properly denied.

In light of the transfer of Coleman's claims against the USP-Terre Haute defendants, the dismissal of the other named defendants for various reasons, and the denial of Coleman's motions, this proceeding will be dismissed and stricken from the Court's active docket.

### III.

Accordingly, **IT IS ORDERED** as follows:

(1)     The Clerk of the Court is directed to correct the CM/ECF cover sheet as

follows:

       (a)     to reflect that the correct name the name of Defendant "**Ndafie**" is "Andrew **Ndfie**, Assistant Health Services Administrator at USP-Terre Haute."

       (b)     to docket Coleman's January 3, 2011 Amended Complaint [R. 21], as the **Second** Amended Complaint;.

     (2)     Pursuant to Federal Rule of Civil Procedure 21, Coleman's constitutional claimsagainst the USP-Terre Haute Defendants (Helen J. Marberry, Warden; Andrea McPherson, Case Manager; Robert Erwin, Counselor; Debbie Burton, Counselor; Kelly Westinghouse, Psychologist; "Swift," Case Manager; Hector Joyner, Captain; Hattie Sims, former Executive Assistant to Warden Marberry; Dennis Gaymon; and Andrew Ndfie, Assistant Health Services Administrator) set forth in R. 2, R. 7, and R. 26, are **SEVERED** from this action and are **TRANSFERRED** to the United States District Court for the Southern District of Indiana for all further disposition.  The Clerk of the Court shall assign the next case number to Plaintiff Monroe Coleman.  The Clerk of the Court shall further advise counsel of the new case number assigned; however, the matter shall remain assigned to same District Judge and Magistrate Judge.  Further, no additional filing fee shall be required in the new case;

     (3)     Coleman's constitutional claims set forth in the "Affidavits" he filed on April 29, 2011, [R. 33, R. 34, and R. 35], are **DISMISSED WITHOUT PREJUDICE**;

     (4)     Coleman's constitutional claims against Eric Wilson, former Warden of USP-McCreary, are **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted;

(5)     Coleman's constitutional claims against USP- McCreary Defendants "Dr." Rush, Mullins, Neal, and "Counselor" Partin, set forth in the Second Amended Complaint, [R. 21], are **DISMISSED WITHOUT PREJUDICE** to Coleman administratively exhausting those claims;

(6)     Coleman's constitutional claims against the BOP Defendants (Harley Lappin, BOP Director; Michael Nelley, Regional Director of the BOP's Northeast Regional Office; Ivy Finenstadt , a/ka/ "Ivy Feinenstadt"; Richard W. Schott, Regional Counsel of the BOP's North Central Regional Office; and Delbert G. Sayers, Supervisor of the BOP Designation & Sentence Computation Center), are **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted;

(7)     Coleman's constitutional claims against "Wiley," former Warden of USP-Atlanta, are **DISMISSED WITHOUT PREJUDICE** to Coleman asserting those claims in the proper venue;

(8)     Coleman's constitutional claims against Kimberly Moore, former employee of USP-Big Sandy, are **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted;

(9)     Coleman's constitutional claims against Congresswoman Eleanor Holmes Norton are **DISMISSED WITHOUT PREJUDICE** to Coleman asserting them in the proper venue;

(10)    Coleman's motion to amend his original Complaint to assert a claim under the Federal Tort Claims Act, [R. 22], is **DENIED**;

(11)    Coleman's motion for Clarification, [R. 29], is **DENIED as MOOT**;

(12)    Coleman's motion to set aside the Orders entered on February 26, 2011, and March 29, 2011, [R. 31], is **DENIED as MOOT**;

(13)    Coleman's motion to amend his original Complaint to assert a constitutional claim against USP-McCreary employee John C. Booker, [R. 36], is **DENIED**; and

(14)    This proceeding is **DISMISSED** and **STRICKEN** from the Court's active docketand a Judgment will be separately entered this date.

This the 29th of September, 2011.

Signed By:

*Gregory F. Van Tatenhove*

**United States District Judge**